**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

J-M MANUFACTURING, INC.,

Plaintiff,

v.

AFFILIATED FM INSURANCE COMPANY, et al.,

Defendants.

Case No.: 2:19-cv-05550-MEMF (SKx)

**ORDER DENYING MOTION FOR LEAVE TO AMEND AND/OR SUPPLEMENT ANSWER [ECF NO. 192]**

Before the Court is the Motion for Leave to Amend and/or Supplement Answer filed by Defendant Affiliated FM Insurance Company. ECF No. 192. For the reasons stated herein, the Court hereby DENIES the Motion for Leave to Amend and/or Supplement Answer.

## I. Background

### A. Factual Background

Plaintiff J-M Manufacturing, Inc. ("JM Eagle") manufactures high grade, high performance plastic pipes. JM Eagle took out an "all risk" property insurance policy with Defendant Affiliated FM Insurance Company ("AFM") for the period from November 1, 2016, to November 1, 2017 (the

"Policy"). This dispute concerns whether or not the Policy covers losses suffered by JM Eagle in August 2017 due to damage caused by Hurricane Harvey.

**B. Procedural History**

On May 28, 2019, JM Eagle filed this action in the Superior Court of California, County of Los Angeles, alleging claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and declaratory relief. ECF No. 1-1 ("Initial Complaint" or "Initial Compl.") at 3. On June 26, 2019, AFM removed the action to federal court. ECF No. 1. On January 15, 2021, Judge Holcomb issued a Civil Trial Scheduling Order stating:

> There is no separate deadline for the parties to amend their pleadings or to add parties. Parties who wish to amend pleadings or to add parties shall comply with Rule 15(a) and, if applicable, Rule 16(b)(4) of the Federal Rules of Civil Procedure, as well as L.R. 15-1 through L.R. 15-3 and L.R. 16-14.

ECF No. 33 ("January 2021 CTO"). Although the January 2021 CTO was revised numerous times, the deadline for parties to amend their pleadings or add parties remained unchanged. *See* ECF No. 95 ("August 2021 CTO"); ECF No. 171 ("August 2022 CTO"); ECF No. 186 ("December 2022 CTO").

On January 22, 2021, the parties filed Cross-Motions for Partial Summary Judgment. ECF Nos. 34, 37. On July 6, 2021, the Court issued an Order granting partial summary judgment. ECF No. 87 ("MSJ Order") at 12, 15. On August 26, 2021, JM Eagle filed a First Amended Complaint. ECF No. 96 ("FAC"). The FAC alleged the same facts with respect to JM Eagle's bad faith claim.

On October 15, 2021, JM Eagle filed a Motion for Reconsideration on the Court's MSJ Order. ECF No. 99 ("Reconsideration Mot."). On February 9, 2022, the Court issued an order granting JM Eagle's Motion for Reconsideration. ECF No. 105 ("Reconsideration Order"). The next day, pursuant to an Order of the Chief Judge, the case was reassigned to this Court. ECF No. 106.

On February 25, 2022, JM Eagle filed a Second Amended Complaint. ECF No. 110 ("SAC").

On March 12, 2022, AFM filed a Motion to Strike the SAC. However, before the Court issued an order on the Motion to Strike, the parties filed a Joint Stipulation regarding JM Eagle's Bad Faith Claim, which they later amended on July 7, 2022. ECF No. 144 ("Amended Bad Faith

Stipulation" or "Amend. Bad Faith Stip."). On September 12, 2022, the Court granted the Amended Bad Faith Stipulation, ordering:

> 1. JM Eagle's **bad faith claim and related prayer for punitive damages** consists of allegations concerning (1) the **reasonableness of AFM's initial and continued reliance on the opinions of its forensic accounting expert Conrad Biegel of Matson Driscoll & Damico set forth in his report dated May 4, 2021, and any subsequent opinions, with respect to JM Eagle's claimed business interruption losses arising from property damage at its Wharton, Texas, facility**; and (2) the **reasonableness of AFM's investigation, handling, and adjustment of JM Eagle's claimed supply chain losses, including as set forth in the adjuster's letter dated May 18, 2021. All other allegations of bad faith, including allegations based on AFM's application of the policy term "occurrence," remain dismissed**.
> 2. AFM's **Motion for Summary Judgment** (ECF No. 34) with respect to the Wharton Bad Faith Claim and any associated punitive damages—which Judge Holcomb granted in his MSJ Order—is hereby **withdrawn**.
> 3. AFM's pending **Motion to Strike** (ECF No. 114) is hereby **withdrawn**.

ECF No. 172 ("Amended Bad Faith Stipulation Order" or "Amend. Bad Faith Stip. Order") (emphasis added).

On March 12, 2022, AFM filed the operative Answer to the SAC. ECF No. 115 ("Answer").

On December 14, 2022, JM Eagle filed Motions in Limine, particularly one seeking to exclude evidence and argument regarding AFM's fraud and misrepresentation affirmative defense. ECF No. 181 ("JME MIL 1"). On January 19, 2023, AFM filed the instant Motion for Leave to Amend and/or Supplement its Answer. ECF No. 192; 193 ("Mot." or "Motion"). The Motion was fully briefed on February 16, 2023. ECF Nos. 196 ("Opp'n"), 197 ("Reply"). The Court deemed this matter appropriate for resolution without oral argument and took the Motion under submission. *See* ECF No. 201.

AFM's Proposed Amended Answer adds, in relevant part, new factual allegations regarding AFM's fraud and misrepresentation affirmative defense. ECF No. 194-2 ("Proposed Amended Answer"). In particular, the Proposed Amended Answer includes the following new allegations:

> **<u>Misrepresentation regarding maintenance of financial records</u>**
>
> Chuck Clark, JM Eagle's Vice President of Production, made the following representation in his Declaration in Support of JM Eagle's Motion for Summary Judgment:

JM Eagle recognizes company-wide profits and losses as a company headquartered in Los Angeles and does not have subsidiary entities located at manufacturing facilities. Accordingly, JM Eagle does not maintain separate financial records on a plant-by-plant or location-by-location basis. All financial records are maintained on a company-wide basis.

Decl. of Chuck Clark, ¶ 10 [ECF No. 138-8, at Page ID #4760-61].

This representation was knowingly false. JM Eagle previously represented that it had monthly income statements for its individual plants from 2015 through 2018 and, in fact, had produced those monthly income statements by plant. In addition, JM Eagle admitted in a letter to AFM that its "January 11 claim submission details JM Eagle's losses by plant, which allows Affiliated FM to segregate . . . JM Eagle's Supply Chain losses suffered at its other plants." Furthermore, JM Eagle's damages expert measured the Supply Chain loss by allocating the claimed loss to 18 different JM Eagle production facilities.

JM Eagle's misrepresentation that it does not maintain separate financial records on a plant-by-plant or location-by-location basis and that financial records are maintained on a company-wide basis was material in that it was made after the Court's summary judgment ruling in an attempt to apply the $2.5 million sub-limit (and not the $2 million Business Interruption sub-limit for all non-headquarters locations as found by the Court) to its Supply Chain claim.

**<u>Misrepresentation regarding "wind" as cause of damage</u>**

JM Eagle represented in its First and Second Amended Complaints and in its Second Amended and Supplemental Proof of Loss signed under penalty of perjury that all physical damage sustained at the Wharton facility from August 25 through August 27, 2017, and all Business Interruption losses arising out of that damage, were not caused by "Wind" as defined in the AFM Policy.

This representation was knowingly false. At a May 23, 2019 meeting between AFM and JM Eagle and their counsel at JM Eagle's headquarters, JM Eagle's counsel represented that:

a. Most of the damage that has been claimed by JM Eagle was caused by wind-driven rain and not by flood; and

b. AFM should initiate the valuation process in order to calculate the wind deductible for a potential forthcoming wind claim.

In its Complaint filed on May 28, 2019—nearly two years after Hurricane Harvey—JM Eagle admitted that:

All physical damage sustained at the Wharton facility from August 25 through August 27, 2017, and all Business Interruption losses arising out of that damage, were caused by "Wind" as defined in the Policy . . ..

(Compl., ¶ 29(c) [ECF No. 1-1, at Page ID # 13].) (Ex. 260)

> Similarly, in its original Proof of Loss for the Wharton facility, signed under penalty of perjury and prepared on October 7, 2019 and its Amended Proof of Loss signed under penalty of perjury and dated September 28, 2020, JM Eagle represented that "tornadic rain and wind" caused the nonflood damage at the Wharton facility.
>
> JM Eagle's misrepresentation that all physical damage sustained at the Wharton facility from August 25 through August 27, 2017, and all Business Interruption losses arising out of that damage, were not caused by "Wind" as defined in the AFM Policy was material in that it was made after the Court's summary judgment ruling in an attempt to avoid application of the "Wind and Hail" deductible as found by the Court.

Proposed Amended Answer at 13–15.

## II. Applicable Law

Under Federal Rule of Civil Procedure 15(a), a party seeking to amend an Answer may do so once "as a matter of course" within 21 days after serving it. FED. R. CIV. P. 15(a)(1)(A). A party seeking to amend an Answer more than 21 days after serving it "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

Once the district court has issued a CTO establishing the schedule of discovery, pretrial, and trial dates, Federal Rule of Civil Procedure 16 governs the standards for amending pleadings. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16 provides in relevant part:

> (b) [The district court] . . . shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference, . . . enter a scheduling order that limits the time
>
> (1) to join other parties and to amend the pleadings;
> (2) to file and hear motions; and
> (3) to complete discovery.
>
> . . .
>
> The order shall issue as soon as practicable but in no event more than 120 days after filing of the complaint. A schedule shall not be modified except by leave of ... [the district court] upon a showing of good cause.[1]

[1] The Court notes that orders entered before the final pretrial conference may be modified upon a showing of "good cause," FED. R. CIV. P. 16(b), but orders "following a final pretrial conference shall be modified only to prevent manifest injustice." FED. R. CIV. P. 16(e). Because the final pretrial conference has not yet occurred, the Court considers this motion under the "good cause" standard.

FED. R. CIV. P. 16. Under Rule 16, a district court may find "good cause" to amend the CTO "if [the CTO deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (quoting FED. R. CIV. P. 16 advisory committee's notes (1983 amendment)). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609). Moreover, Courts have held that carelessness may not be cited as a reason for modification and is not a basis upon which relief may be granted. *See, e.g.*, *Johnson*, 975 F.2d at 609 (collecting cases).

Because a motion for amending the CTO and amending a complaint may appear similar at first glance, courts have explicitly differentiated the evaluation of "good cause" under Rule 16 from the evaluation of the propriety of amendment under Federal Rules of Civil Procedure Rule 15. *Id.* at 609. "Unlike Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.*

## III. <u>Discussion</u>

Here, AFM requests permission to amend and/or supplement its Answer on the grounds that there has been no undue delay, there is no bad faith, amendment would not be futile, JM Eagle would not be prejudiced, no additional discovery is needed, and this is AFM's first requested amendment. Mot. at 11–17. JM Eagle opposes the Motion, no "good cause" exists for AFM's failure to diligently seek leave to amend, AFM unduly delayed in amending its answer, AFM's delayed amendment would prejudice JM Eagle, and the proposed amendments would be futile. Opp'n at 4–7.

Before the Court may grant leave for AFM to amend or supplement its Answer, the Court must first determine whether AFM has demonstrated "good cause" to justify modifying the CTO—and, more specifically, the deadline to amend pleadings. Under the operative CTO and Federal Rule of Civil Procedure 15(a), the deadline for AFM to amend their pleadings or add parties without leave of the Court expired on March 4, 2022 (the first business day after the 21-day deadline lapsed). *See* January 2021 CTO ("Parties who wish to amend pleadings or to add parties shall comply with Rule 15(a) . . . ."). Although the parties previously submitted joint stipulations regarding the various

claims and the CTO was modified multiple times, the parties have never stipulated to or otherwise indicated the need for a continuance of the deadline to amend the pleadings. In determining whether "good cause" exists to modify the deadline to amend the pleadings, the Court must determine whether AFM made diligent attempts to amend the CTO.

AFM contends that "its affirmative defense is properly pled and no amendment is necessary," but that "in an abundance of caution," it seeks leave to amend and supplement its Answer to resolve issues raised in JME MIL 1. Mot. at 4. AFM asserts that the proposed amendments set forth detail regarding (1) "JM Eagle's misrepresentation regarding the financial records maintained by JM Eagle, based on a declaration filed in June 2022" and (2) "JM Eagle's misrepresentation regarding 'wind' as the cause of damage." *Id.* It further notes that "[i]t was only after the Court issued several summary judgment rulings in AFM's favor in July 2021 that JM Eagle changed course and adopted its current position regarding cause of damage at the JM Eagle Wharton facility. *Id.* at 4–9.

AFM contends that it acted diligently, as it requested to leave to amend on January 19, 2023, after JM Eagle raised an objection to AFM's existing defense on December 14, 2022. Mot. at 10.

The Court finds that, by AFM's own admission, the facts forming the basis for the new allegations was available to AFM as early as July 2021 (for the second alleged misrepresentation regarding cause of damage) and June 2022 (for the first alleged misrepresentation regarding the financial records maintained by JM Eagle). In July 2021, the Court issued a summary judgment ruling holding that the "Wind and Hail" deductible of over $2 million would apply to JM Eagle's non-flood losses at the Wharton facility, which AFM alleges led JM Eagle to represent—allegedly falsely—that its non-flood damages and losses at the Wharton facility were caused by "vertical rain" and not solely "wind." Mot. at 6. Moreover, in June 2022, an officer of JM Eagle represented that "JM Eagle does not maintain separate financial records on a plant-by-plant or location-by-location basis." *Id.* Given that months have passed since AFM became privy to the information necessary for its amendment, AFM's failure to file a Motion to Amend the CTO or for Leave to Amend or Supplement Answer over the past year and a half indicates a lack of diligence.

For purposes of this motion, it is of no moment that JM Eagle only first raised potential deficiencies in AFM's answer in December 2022.[2] AFM does not assert that it ever identified these misrepresentations as the basis of this affirmative defense prior to December 2022. And AFM does not point to anything that would have put JM Eagle on notice—prior to December 2022—that AFM would seek to use these facts to support this defense.

Although AFM asserts that delay alone is not sufficient grounds to deny leave to amend, its analysis and the cases cited in support of its assertion are concerned primarily with FED. R. CIV. P.'s standards for determining when to grant leave to amend pleadings—*not* whether to grant leave to amend the CTO. *See, e.g.*, *Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973) (holding that it is abuse of discretion to *deny leave to amend pleadings* based on delay alone); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 ("[D]elay, by itself, is insufficient to justify denial of leave to amend [a pleading]."); *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) ("[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend [pleadings]."); *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 2021 WL 2370617, at * 4 (C.D. Cal. Feb. 2, 2021) ("As the Court has already determined a lack of prejudice, it declines to deny leave to amend [the complaint] solely because of delay."). Indeed, the primary question when considering a request for leave to amend the CTO is whether good cause exists to do so and, in particular, whether the requesting party was diligent in seeking amendment. *Johnson*, 975 F.2d at 609; *Zivkovic*, 302 F.3d at 1087.

In light of the foregoing reasons, the Court concludes that AFM has failed to demonstrate good cause to justify a modification of the CTO. *See* FED. R. CIV. P. 16(b). Accordingly, the Court DECLINES to amend the CTO.

Because the Court has declined to amend the CTO, the Court need not consider AFM's Motion for Leave to Amend/Supplement the Answer. Because AFM's "ability to amend his

---

[2] Even assuming that AFM did not become aware of the potential deficiencies in its Answer until December 14, 2022, its actions still indicate a lack of diligence. The instant Motion was not filed until January 19, 2023—over a month since JM Eagle filed its Motion in Limine 1 and nearly a month after the Court continued the pending Final Pretrial Conference to April 16, 2023. Yet, AFM made no effort in that period to seek Leave to Amend the CTO or the Answer.

complaint [is] governed by Rule 16(b)" and it has not demonstrated "good cause," the CTO will not be amended. *Johnson*, 975 F.2d at 608. Since the CTO's deadline to file amended pleadings remains in place, the Motion for Leave to Amend/Supplement the Answer is therefore DENIED as untimely. *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (concluding that because the parties never modified the CTO before the deadline had passed, the district court properly denied the motion to amend as untimely).

## IV. **Conclusion**

For the foregoing reasons, the Court hereby ORDERS that the Motion for Leave to Amend/Supplement the Answer (ECF No. 192) is DENIED.

IT IS SO ORDERED.

Dated: February 27, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge