**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JM MANUFACTURING COMPANY, INC., | Case No.: 2:19-cv-05550-MEMF-SKx |
| Plaintiff, | **ORDER ON DEFENDANT AFFILIATED FM INSURANCE COMPANY'S MOTIONS *IN LIMINE* [ECF NOS. 209–212] AND PLAINTIFF JM MANUFACTURING COMPANY, INC.'S [ECF NOS. 220-221]** |
| v. | |
| AFFILIATED FM INSURANCE COMPANY, | |
| Defendant. | |

Before the Court are four (4) motions *in limine* filed by Defendant Affiliated FM Insurance Company (ECF Nos. 209–212 and two (2) motions *in limine* by Plaintiff JM Manufacturing Company, Inc. (ECF Nos. 220–221). For the reasons stated herein, the Court GRANTS the motions in part and DENIES the motions in part as described below.

/ / /

/ / /

1

## I.   **Background**

### A.  **Factual Background**

Plaintiff J-M Manufacturing, Inc. ("JM Eagle") manufactures high-grade, high-performance plastic pipes. JM Eagle took out an "all risk" property insurance policy with Defendant Affiliated FM Insurance Company ("AFM") for the period from November 1, 2016, to November 1, 2017 (the "Policy"). This dispute concerns whether or not the Policy covers losses suffered by JM Eagle in August 2017 due to damage caused by Hurricane Harvey.

### B.  **Procedural History**

On May 28, 2019, JM Eagle filed this action in the Superior Court of California, County of Los Angeles, alleging claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing (referred to herein as the "bad faith claim"), and declaratory relief. ECF No. 11 ("Initial Complaint" or "Initial Compl.") at 3. On February 25, 2022, JM Eagle filed a Second Amended Complaint. ECF No. 110 ("SAC"). JM Eagle's SAC set forth new allegations regarding the Bad Faith Claim as it relates to the Wharton facility.

On February 23, 2023, the Court issued an Order Denying Plaintiff's Second Motion for Partial Summary Judgment, Granting in Part Defendant's Renewed Motion for Summary Judgment, and Granting Plaintiff's Request for Judicial Notice. ECF No. 199 ("MSJ Order").[1] On January 19, 2023, AFM filed a Motion for Leave to file an Amended and Supplemental Answer to JM Eagle's Second Amended and Supplemental Complaint. ECF No. 192. The Court denied the motion on February 27, 2023. ECF No. 202. A more fulsome procedural history may be found in this order and the MSJ Order.

On April 4, 2023, AFM filed four (4) motions *in limine* (ECF Nos. 209–212) and JM Eagle filed two (2) motions *in limine* (ECF Nos. 220–221). Oppositions to these motions were filed on

---

[1] The Court notes that in its discussion of the Policy's Wind and Hail Deductible, and when quoting the Policy, it erroneously cited to AFM's Statement of Uncontroverted Facts (ECF No. 133). MSJ Order, at 15 (citing to AFM SUF ¶¶ 17, 18). However, the correct citation should be to AFM's Statement of Genuine Disputes of Material Fact and Statement of Additional Facts (ECF No. 142 ("AFM SAF")).

April 12, 2023. ECF Nos. 226–27, 229–32. The Court held oral argument on the motions at the Final Pretrial Conference ("FPTC") on April 26, 2023.[2]

## II.  **Applicable Law**

### A.  **Motions *in limine***

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party files a motion *in limine* to exclude anticipated prejudicial evidence before the evidence is introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Id.* at 41 n.4 (citation omitted). Regardless of a court's initial decision on a motion *in limine*, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

### B.  **Federal Rule of Civil Procedure 26**

Under Federal Rule of Civil Procedure 26(a)(2), a party is required to disclose an expert witness and submit an accompanying report prepared by the witness. FED. R. CIV. P. 26(a)(2)(A)–(B). This written report must contain, in part: (1) a complete statement of all opinions expressed by the witness and the "basis and reasons for them"; (2) the facts and data used by the witness in forming his or her opinions; and (3) the exhibits that will be used to support or summarize the opinions. FED. R. CIV. P. 26(a)(2)(B)(i)–(iii).

### C.  **Federal Rule of Civil Procedure 16**

Once a district court has issued a CTO establishing the schedule of discovery, pretrial, and trial dates, Federal Rule of Civil Procedure 16 governs the standards for amending pleadings.

---

[2] The Court distributed a tentative ruling to the parties in advance of the hearing. The parties submitted on the tentative with respect to the following Motions in limine: AFM's Motions *in limine* Nos. 1 and 4 and JM Eagle's Motion *in limine* No. 1. The Court's ruling on these Motions is identical to the tentative ruling.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16 provides in relevant part:

> (b) [The district court] . . . shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference, . . . enter a scheduling order that limits the time
> > (1) to join other parties and to amend the pleadings;
> >
> > (2) to file and hear motions; and
> >
> > (3) to complete discovery.
>
> . . .
> The order shall issue as soon as practicable but in no event more than 120 days after filing of the complaint. A schedule shall not be modified except by leave of ... [the district court] upon a showing of good cause.[3]

FED. R. CIV. P. 16. Under Rule 16, a district court may find "good cause" to amend the CTO "if [the CTO deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (quoting FED. R. CIV. P. 16 advisory committee's notes (1983 amendment)). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609). Moreover, courts have held that carelessness may not be cited as a reason for modification and is not a basis upon which relief may be granted. *See, e.g.*, *Johnson*, 975 F.2d at 609 (collecting cases).

### D. Federal Rule of Evidence 702

The personal knowledge requirement for lay witnesses does not apply to expert testimony. FED. R. EVID. 602. Federal Rule of Evidence 702 allows a witness to testify as an expert "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Alonso*, 48 F.3d 1536, 1540 (9th Cir. 1995) (quoting FED. R. EVID. 702). While Courts may reject wholly speculative or unfounded testimony, it

---

[3] The Court notes that orders entered before the final pretrial conference may be modified upon a showing of "good cause," FED. R. CIV. P. 16(b), but orders "following a final pretrial conference shall be modified only to prevent manifest injustice." FED. R. CIV. P. 16(e). Because the final pretrial conference has not yet occurred, the Court considers this motion under the "good cause" standard.

abuses its discretion if it overlooks relevant data submitted as the foundation of an expert's remarks." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). Experts may express opinions without published support if they provide an explanation of why such publications are unavailable. *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010). This concern regarding speculation speaks to weight, not reliability. *Elosu*, 26 F.4th at 1025.

### E.  Federal Rules of Evidence 401 and 402

Federal Rule of Evidence 402 explicitly prohibits the inclusion of "irrelevant" evidence. FED. R. EVID. 402. The Rule dictates that "[r]elevant evidence is admissible unless any of the following provides other: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." FED. R. EVID. 402.

Federal Rule of Evidence 401 prescribes what evidence qualifies as relevant. FED. R. EVID. 401. It provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* 401(a)–(b); *see also Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("Deciding whether a fact is of consequence in determining the action generally requires considering the substantive issues the case presents." (internal quotation marks omitted)). Courts have recognized that Rule 401's "basic standard of relevance . . . is a liberal one." *Crawford*, 944 F.3d at 1077.

### F.  Federal Rule of Evidence 403

Federal Rule of Evidence 403 dictates that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." District courts have broad discretion in assessing admissibility under Rule 403. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 US 379, 384 (2008) (finding "wide discretion" necessary because Rule 403 "requires an on-the-spot balancing of probative value and prejudice, potentially to exclude . . . evidence that already has been found to be factually relevant") (internal quotes omitted); *see also Hardeman v. Monsanto Co.*, 997 F.3d 941, 967 (9th Cir. 2021),

*cert. denied*, 142 S. Ct. 2834 (2022) ("A district court's Rule 403 determination is subject to great deference, because the considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues.").

### G. Federal Rules of Evidence 801, 802, and 805

As defined by Federal Rule of Evidence 801, "hearsay" is an out-of-court statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801. A statement includes "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." *Id.* Under Federal Rule of Evidence 802, hearsay evidence is inadmissible unless otherwise provided by a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 802. Hearsay within hearsay is likewise inadmissible unless each part of the combined statements conforms with an exception to the rule against hearsay. FED. R. EVID. 805.

### III.   <u>Discussion</u>

AFM moves to exclude at trial (1) any reference or argument of all bad faith allegations that were dismissed prior to trial (ECF No. 209), (2) testimony offered by expert witness Jeffrey Posner (ECF No. 210), (3) testimony, evidence, and argument relating to the "Clorox documents" (ECF No. 211), and (4) testimony offered by expert witness Israel Jasso (ECF No. 212).

JM Eagle moves to exclude at trial (1) any argument or evidence of AFM's misrepresentation defense (ECF No. 220), and (2) testimony and opinion offered by AFM's expert witness Brett Lochridge (ECF No. 221).

### A.   Any reference or argument of bad faith beyond the sole remaining allegation identified in the Court's Order Granting Amended Stipulation Regarding JM Eagle's Bad Faith Claim and Related Prayers for Punitive Damages shall be permitted in part (AFM's Motion *in limine* No. 1, ECF No. 209).

AFM requests that the Court exclude all evidence, reference, or argument relating to bad faith except in relation to the remaining allegation because it is irrelevant as (1) only one of JM Eagle's bad theories remains for trial and (2) all other bad faith theories were dismissed. ECF No.

209 at 1; ECF No. 209-1 at 3. JM Eagle opposes this motion *in limine* contending that AFM's requested relief is "too vague to be granted" because AFM does not specify which evidence it seeks to preclude, does not provide a workable framework, and the use of such terms it seeks to preclude can only be evaluated in context. ECF No. 229 at 4–5.

AFM argues that references to AFM's alleged breach of implied covenant of good faith and fair dealing, including use of the terms "good faith" and "bad faith," should be excluded under FED. R. EVID. 401 and 402 as irrelevant to the jury's determination of the remaining allegation and misleading as to what conduct should be considered. ECF No. 209-1 at 3–4. JM Eagle does not appear to dispute that its claim for tortious breach of the implied covenant of good faith and fair dealing has been limited to only AFM's reliance on the opinions of one of its experts; however, it contends that the relief AFM seeks is "too amorphous to be granted" to be granted at this time. ECF No. 229 at 4–5.

Upon consideration of the parties' moving briefs, the Court finds that the request is not too vague or amorphous to be granted. Thus, the Court GRANTS AFM's Motion *in limine* No. 1 in part. All evidence, reference, and argument to bad faith outside of the one bad faith theory remaining in the case are EXCLUDED. The Court DENIES AFM's Motion in part as JM Eagle is not precluded from using the terms "good faith" and "bad faith," as long as they relate to the remaining bad faith theory.

### B. The testimony of Jeffrey Posner shall be permitted in part (AFM's Motion *in limine* No. 2, ECF No. 210).

AFM requests that the Court exclude any and all testimony of Jeffrey Posner ("Posner") because his testimony (1) is not relevant to any fact of consequence in determining the action and (2) constitutes improper expert opinions. ECF No. 210-1 at 1, 4. JM Eagle argues that Posner's expert testimony is relevant and reliable because his testimony (1) helps a jury understand the industry standards, customs, and practices, and (2) provides information derived from his specialized experience in the industry. ECF No. 230 at 10–11.

AFM argues that Posner's testimony should be included because: (1) testimony based on his Initial Report addressing the application of the term "occurrence" is irrelevant because allegations of

bad faith based on the application of the term "occurrence" have been dismissed; (2) testimony based on his Rebuttal Report is irrelevant because the Rebuttal Report responds to expert opinions that will not be offered because they are irrelevant to the remaining bad faith issue; (3) testimony based on his Supplemental Report is irrelevant because they rely on the same opinions disclosed in his Initial and Rebuttal Report; (4) his opinion on the May 2021 Biegel opinion is improper under FED. R. EVID. 702 due to his lack of training or expertise in the area of accounting. ECF No. 210-1 at 1–3. AFM also argues that Posner's opinions constitute improper legal conclusions under FED. R. EVID. 702 because: (1) his Reports improperly summarize the law governing insurance disputes; (2) Posner's legal recitations and conclusions improperly invade the Court's role as instructor for the jury on the law; and (3) Posner's opinions regarding breach of the duty of good faith and fair dealing are impermissible legal conclusions. *Id.* at 4–6. JM Eagle argues that Posner's testimony is relevant because it will assist the jury in determining whether AFM's reliance on its expert's opinion was reasonable—an issue as to which the Court has recognized exists a genuine dispute of material fact—by helping the jury understand the customs, practices, and standards of the insurance industry. ECF No. 230 at 10. Moreover, Posner has over forty-five years of experience in the insurance, brokerage, and risk management fields and is therefore qualified to testify as an expert. *Id.* at 11.

In his initial expert report, Posner offers the following opinions or categories of opinions: (1) A description of relevant industry customs, practices and/or standards, Expert Report of Jeffrey M. Posner, ECF No. 244-1 ("Posner Initial Report"), at 4–6[4]; (2) State insurance regulations reflect the customs, practices, and/or standards of the industry, *id.* at 6–7; and (3) AFM's position that the entire loss is one occurrence is based upon a narrow and flawed reading of its policy, which is inconsistent with the duty of good faith and fair dealing under the customs, practices, and/or standards of the Industry, *id.* at 7–11; and (4) AFM's position with respect to how its SC coverage applies appears incorrect and may have the effect of depriving JM Eagle of benefits to which it would otherwise be entitled, *id.* at 11–13. Such a position is inconsistent with the duty of good faith and fair dealing under the customs, practices, and/or standards of the industry. *Id.* at 11–13. In his rebuttal report, he

---

[4] The pincites related to the expert reports refer to the page of the report, rather than the page of the ECF filing.

purports to respond to the expert report of AFM expert Peter Evans and offers the opinion that he disagrees with Evans's opinion regarding AFM's application of coverage limitations. Expert Rebuttal Report of Jeffrey M. Posner, ECF No. 244-2 ("Posner Rebuttal Report"), at 2. In his Supplemental Report, Posner describes the AFM Policy and then offers opinions regarding the "relevant industry practices, and/or standards for the adjustment of claims." Supplemental Expert Report of Jeffrey M. Posner, ECF No. 244-3 ("Posner Supp. Report"), at 5. In its Opposition, JM Eagle only points to two of Posner's opinions that remain relevant—those set forth in paragraphs 3 and 4 of the Supplemental Report. Posner Supp. Report, at 6–7. As such, JM Eagle appears to concede that the Rebuttal Report is wholly irrelevant in the absence of the Evans opinion, and that the Initial Report is largely relevant outside of its discussion of industry customs, practices, and/or standards.

The Court finds that the witness offered is a designated expert with appropriate credentials. Aside from the issue of relevance, AFM's arguments go towards factual disagreement, bias, and weight, but not his actual qualifications or an absence of the basis for opinions.

At the hearing, the parties agreed that the opinion set forth in paragraphs 3–5 of section IV of Posner's Initial Report are not relevant. The parties also agreed that the opinion set forth in paragraph 7 section IV of Posner's Initial Report is only relevant with respect to what was considered by AFM in its reliance on Biegel's expert opinion.

Accordingly, the Court GRANTS AFM's Motion *in limine* No. 2 in part. JM Eagle shall only be permitted to present testimony by Posner with respect to the following opinions: (1) those set forth in paragraphs 1, 2, 6, and 8 of section IV of Posner's Initial Report, Posner Initial Report at 4–6; (2) those set forth in paragraph 7 of section IV of Posner's Initial Report as it relates to the circumstances surrounding the consideration of the Biegel opinion, Posner Initial Report at 5–6; and (3) those set forth in paragraphs 3 and 4 of section IV of Posner's Supplemental Report, Posner Supp. Report at 6–7.

/ / /

/ / /

**C.  The motion to exclude documents from other claim files is denied as moot (AFM's Motion *in limine* No. 3, ECF No. 211).**

AFM requests that the Court exclude all evidence, reference, or argument relating to the "Clorox documents" regarding another hurricane-related insurance coverage dispute because the documents (1) are not relevant under FED. R. EVID. 401, (2) risk confusing the issues under FED. R. EVID. 403, and (3) contain hearsay within hearsay under FED. R. EVID. 801. ECF No. 211-1 at 1. JM Eagle opposes this motion *in limine* on the basis that (1) AFM failed to identify or describe the Clorox documents, (2) AFM failed to establish that the Clorox documents are irrelevant, as they reference "suppliers still at issue in JM Eagle's Supply Chain claim," and (3) AFM did not establish that the Clorox documents *all* contain and are to be only used as hearsay. ECF No. 231.

At the hearing, the parties identified the two exhibits on the Joint Exhibit List, ECF No. 218, which are at issue: (1) Loss Transaction Activity Report (beginning at Bates No. AFM 27616); and (2) Force Majeure Declarations (beginning at Bates No. AFM 27460. ECF No. 218 at 20. JM Eagle asserted that it only intends to present these exhibits as impeachment, and on the basis of that assertion, AFM withdrew its objection to these. Accordingly, the Court DENIES AFM's Motion *in limine* No. 3 as MOOT without prejudice to renewing the motion if and when JM Eagle indicates that it seeks to introduce any of these documents as anything other than impeachment.

**D.  The testimony of Israel Jasso shall be permitted (AFM's Motion *in limine* No. 4, ECF No. 212).**

AFM requests that the Court exclude all testimony and opinions by Israel Jasso ("Jasso"), JM Eagle's non-retained roofing expert, because (1) Jasso's testimony is irrelevant under FED. R. EVID. 402, and (2) would be prejudicial and invite speculation by the jury under FED. R. EVID. 403. ECF No. 212 at 6–7. AFM argues Jasso lacks the requisite knowledge of the roof's pre-Harvey condition "to support JM Eagle's position that the replacement was due to damage from Hurricane Harvey." *Id.* at 4. JM Eagle contends that Jasso's testimony is only intended to address two issues: (1) that the roofs were leaking and needed replacement; and (2) that the quote to replace the roofs was approximately $1.3 million. ECF No. 232 at 4. JM Eagle argues Jasso need not provide evidence or

knowledge of the roof's pre-Harvey condition because it intends to offer such evidence through other testimony. *See id.*

The Court finds that the witness offered is a designated expert with appropriate credentials. Aside from the issue of relevance, AFM's arguments go towards factual disagreement, bias, and weight, but not his actual qualifications or an absence of the basis for opinions.

As AFM concedes, Jasso's testimony is relevant if JM Eagle presents other evidence on causation of the roof damage. Given that JM Eagle has provided an offer of proof on this—namely that it will present evidence on the pre-hurricane condition of the roof from which the jury can draw an inference as to the hurricane as a cause of the condition of the roof observed by Jasso—Jasso's testimony is relevant. Accordingly, the Court hereby DENIES AFM's Motion *in limine* No. 4.

### E. The motion to limit triable issues and/or exclude evidence and argument regarding the misrepresentation and fraud policy provision is granted (JM Eagle's Motion *in limine* No. 1, ECF No. 220).

JM Eagle requests that the Court exercise its discretion under Federal Rule of Civil Procedure 16 to exclude evidence of any argument regarding the misrepresentation and fraud policy provision because AFM failed to timely raise its applicable affirmative defense. ECF No. 220, at 9–10. JM Eagle argues AFM should be precluded from raising this defense or providing any facts relating to its misrepresentation allegations at this late stage because AFM did not give adequate notice of the specific facts to be tried in this case until December 2022. *Id.* JM Eagle contends AFM's affirmative defense was not properly preserved in the operative answer "because it is pleaded on a contingent basis and without any supporting allegation." *Id.* at 9. Furthermore, "[to] fairly try this issue on the merits, the Court would have to reopen discovery and allow JM Eagle to file substantive motions challenge the viability of the Misrepresentation Defense, resulting in further delay." *Id.*

AFM argues that (1) this motion is the improper vehicle to dispose of AFM's affirmative defense, (2) the factual basis of the defense is known to JM Eagle, and (3) the evidence used to support to the misrepresentation will be offered in connection with other defenses. *See generally* ECF No. 226. First, AFM argues JM Eagle should have sought to dispose of AFM's affirmative defense at the pleading stage or as a motion for summary judgment, not as a motion *in limine. Id.* at

4. Next, AFM claims JM Eagle is aware of the factual basis of the defense because "its briefing and discovery activities gave JM Eagle plenty of notice of AFM's misrepresentation arguments." *Id.* at 8. Finally, AFM intends to use the evidence supporting its misrepresentation defense in connection with other affirmative defenses, such as AFM's third affirmative defense, and therefore it cannot be excluded. *Id.* at 9.

The Court previously addressed this same issue in its February 27, 2023 Order denying AFM's motion for leave to amend its answer on the grounds that AFM failed to demonstrate good cause to justify a modification of the civil trial scheduling order.[5] ECF No. 202 at 8. As noted in the Court's order,

> it is of no moment that JM Eagle only first raised potential deficiencies in AFM's answer in December 2022. AFM does not assert that it ever identified these misrepresentations as the basis of this affirmative defense prior to December 2022. And AFM does not point to anything that would have put JM Eagle on notice—prior to December 2022—that AFM would seek to use these facts to support this defense.

*Id.* AFM does not assert that it ever identified these misrepresentations as the basis of this affirmative defense prior to December 2022. Nor does AFM point to anything that would have put JM Eagle on notice—prior to December 2022—that AFM would seek to use these facts to support this defense." *Id.* As such, the Court finds that AFM is precluded from relying on these misrepresentations in support of its Affirmative Defense. And as it appears that AFM has no other previously disclosed basis to support this Affirmative Defense, to present evidence and argument on this Affirmative Defense would be unduly prejudicial, confusing, and a waste of the jury's time in violation of Federal Rule of Evidence 403.

For these reasons, the Court GRANTS JM Eagle's Motion *in limine* No. 1.

**F. The testimony of Brett Lochridge shall be permitted (JM Eagle's Motion *in limine* No. 2, ECF No. 221).**

---

[5] The Court explained that AFM must first demonstrate "good cause" to justify modifying the civil trial scheduling order before it may be granted lead to amend its pleadings. ECF No. 202 at 6. The deadline for AFM to amend its pleading expired on March 4, 2022. *Id.*

JM Eagle requests that the Court preclude any opinion testimony of Brett Lochridge ("Lochridge") regarding the cause of damage on the interior of the buildings at the Wharton facility because his opinions are irrelevant, unhelpful, and will only mislead and confuse the jury under FED. R. EVID. 403. ECF No. 221 at 2–3. JM Eagle argues Lochridge's opinion that all of the rain damage on the interior of buildings at the facility resulted from holes in the facility's roof is rooted in a causation standard that differs from the standard required under the insurance policy. *Id.* at 2. In formulating his opinion, Lochridge admittedly did not review the insurance policy or perform an analysis of "Wind" as defined in the policy. *Id.* at 4. As Lochridge did not analyze causation under the standard required under the policy, JM Eagle believes Lochridge's opinion would only confuse and mislead the jury under FED. R. EVID. 403. *Id*. at 6.

AFM argues that Lochridge's overarching opinion is relevant and will help the jury understand the jury apply the insurance policy to the facts under FED. R. EVID. 702. ECF No. 227 at 2. AFM contends that JM Eagle improperly takes Lochridge's testimony out of context and, taken wholistically, the testimony would be helpful to the jury. *Id.* Furthermore, AFM posits that Lochridge's testimony would constitute an improper opinion regarding legal causation rather than factual causation if he were required to adhere to policy language. *Id.* (citing *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("An expert cannot testify to a matter of law amounting to a legal conclusion.")).

The Court finds that the witness offered is a designated expert with appropriate credentials. Aside from the issue of relevance, JM Eagle's arguments go towards factual disagreement, bias, and weight, but not his actual qualifications or an absence of the basis for opinions.

It appears to the Court that the issue of whether any damage was caused by wind or wind-driven rain—on the one hand, or vertical rain—on the other hand—is still in dispute.[6] Accordingly,

---

[6] In reviewing the prior orders issued in this case, the Court notes that it appears the parties understood that the reference to "rain" by Judge Holcomb in discussing the "Wind and/or Hail" Deductible was intended to be a reference to "hail": "Because the interpretation advanced by AFM Insurance is the only reasonable one, the Court concludes that the deductible quoted above applies where there is damage caused by wind, *rain, or* wind and *rain* together." ECF No. 87, at 12 (emphasis added). Similarly, it appears to the Court that the parties also understood this Court's reference to "rain" to be intended as a reference to "hail" in its discussion of the same Deductible. *Id.* at 17–18.

Lochridge's opinions on this issue remain relevant, and the Court DENIES JM Eagle's Motion *in limine* No. 2. It is axiomatic that the Court will instruct the jury on the causation standard that applies, and this is not the province of the expert witnesses. To the extent that AFM attempts to present testimony on legal conclusions through its expert, JM Eagle can renew its objection at that time.

## IV.    <u>Conclusion</u>

For the foregoing reasons, the Court hereby ORDERS as follows:

1.   AFM Motion *in limine* No. 1 (ECF No. 209) is GRANTED IN PART;

2.   AFM Motion *in limine* No. 2 (ECF No. 210) is GRANTED IN PART;

3.   AFM Motion *in limine* No. 3 (ECF No. 211) is DENIED AS MOOT;

4.   AFM Motion *in limine* No. 4 (ECF No. 212) is DENIED;

5.   JM Eagle's Motion *in limine* No. 1 (ECF No. 220) is GRANTED; and

6.   JM Eagle's Motion *in limine* No. 2 (ECF No. 221) is DENIED.


IT IS SO ORDERED.


Dated: April 26, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge